UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED INDICTMENT** |
| v. | 26 Cr. |
| STEFAN PILDES, | **26 CRIM 142** |
| Defendant. | |

The Grand Jury charges:

## BACKGROUND

1.      From at least in or about November 2019, up through and including the date of the filing of this Indictment, STEFAN PILDES, the defendant, organized and promoted a popular, Christmas-themed event held in New York City, among other places, referred to as "SantaCon." SantaCon is a ticketed bar crawl that PILDES hosts annually in December, during which over approximately 25,000 attendees dress as Santa Claus and other holiday characters and travel to participating bars and restaurants throughout the day. PILDES advertised SantaCon as an event to benefit charity. But, in reality, of the at least approximately $2.7 million of SantaCon proceeds that PILDES raised, he siphoned off more than approximately half to an entity he used as a slush fund to finance various personal ventures, and spent hundreds of thousands of dollars of the remaining proceeds to pay for, among other things, concert tickets, fine dining, luxury vacations, and home renovations. PILDES donated only a small fraction of the at least approximately $2.7 million of SantaCon proceeds he raised for charity.

### The SantaCon Charity Scheme

2.      SantaCon primarily generates proceeds through (i) sales of tickets to bar crawl attendees ("Attendees") and (ii) sales commissions from bars and restaurants that serve as host

venues along the bar crawl route ("Venues"). STEFAN PILDES, the defendant, organizes and operates annual SantaCon events through a non-profit entity that PILDES created and controlled called Participatory Safety, Inc. ("PSI"). At all relevant times, PILDES served as the president of PSI. PILDES also opened and is the sole signatory on the bank accounts of PSI. According to PSI's federal tax filings, none of the officers or directors of PSI, including PILDES, receives compensation for their roles with PSI.

### SantaCon Attendees

3.    At all relevant times, STEFAN PILDES, the defendant, maintained a website for SantaCon (the "SantaCon Website") that was used to advertise, promote, and communicate information about SantaCon. Attendees who wished to purchase tickets for SantaCon were directed via the SantaCon Website to a third-party ticketing platform ("Platform-1"), which processed these orders and collected ticket proceeds. PILDES maintained and controlled PSI's account with Platform-1. PILDES also maintained an email account for SantaCon (the "SantaCon Email") that PILDES and PSI representatives used to correspond with Attendees, Venues, and others regarding SantaCon.

4.    STEFAN PILDES, the defendant, through PSI and its representatives, advertised SantaCon tickets to Attendees through the SantaCon Website that PILDES controlled, which promoted, among other things, that (i) a ticket to SantaCon cost between $10 to $20; (ii) by purchasing a ticket, Attendees would receive access to SantaCon Venues; and (iii) proceeds from ticket sales went to various charities. For example, in or about December 2024, PILDES promoted on the SantaCon Website that ticket money went "directly to Santa's charity drive," and that "[y]our money will be split between the various charities listed on this page as well as local neighborhood charities along Santa's route." The SantaCon Website also described SantaCon as a

"charitable, non-political, nonsensical Santa Claus convention." Additionally, on a page titled "For Charity!", PILDES touted SantaCon's alleged large donations to charities and characterized each ticket purchased by an Attendee as a "donation," highlighting to Attendees that they could "brag that [they] actually gave to charity this year."

5.      In addition to the representations on the SantaCon Website, STEFAN PILDES, the defendant, told, or caused PSI representatives to tell, Attendees over emails that SantaCon ticket proceeds would be distributed to charity. When one Attendee, for example, asked what she would receive for purchasing a ticket, the SantaCon Email responded, in part, "your donation goes to charity and it is only a few bucks and that good feeling will warm your heart faster than whiskey and gingerbread."

### SantaCon Venues

6.      STEFAN PILDES, the defendant, also featured SantaCon's charitable mission through promotional agreements with participating Venues. PILDES and PSI representatives regularly solicited dozens of bars and restaurants to serve as official SantaCon Venues. During each annual edition of SantaCon from 2019 to 2024, approximately forty to sixty Venues were official stops on the SantaCon route. Venues entered into agreements with PSI, which were typically signed by PILDES on behalf of PSI. Under the terms of these agreements, the Venues agreed to, among other things: (i) be open during a designated period on the date of the SantaCon event; and (ii) give PSI a designated percentage of their food and beverage sales during the event. This contribution was characterized as a "charitable commission" or "donation" and was typically between 10% and 25% of sales. In exchange, PSI agreed to, among other things: (i) list the venue on the official SantaCon map, website, and mobile application; and (ii) distribute the charitable commission to various charities. A common contract for the 2019 SantaCon, for example,

3

specified that the "charitable commission" would "be distributed as per the SantaCon 2019 charity list."

7.    STEFAN PILDES, the defendant, and PSI representatives, pitched SantaCon to potential Venues through emails that highlighted the event's charitable mission. For example, an informational flyer sent to several Venues for the 2023 SantaCon stated "SantaCon is a 501c3 Charity organization that, over the last 10 years, has raised over a million dollars for local NYC Charities, specifically arts funding and fighting hunger." Additionally, an informational flyer sent to several Venues for the 2019 SantaCon noted that Venues would provide PSI with a "10-25% bar commission to go to participating charities."

### The Defendant Defrauds SantaCon Attendees and Venues

8.    SantaCon events from 2019 to 2024 generated approximately $2.7 million in proceeds. But instead of donating the millions of dollars he raised, STEFAN PILDES, the defendant, misappropriated and stole the majority of SantaCon proceeds by diverting them to an entity that PILDES controlled, Creative Opportunities Group, Inc. ("COG"), that had no public connection to SantaCon. Additionally, PILDES abused his control over PSI's bank accounts to steal hundreds of thousands of dollars in other SantaCon proceeds for his own personal use. Among other things, PILDES spent SantaCon proceeds on extensive renovations to a lakefront property in New Jersey, luxury vacations in Hawaii, Las Vegas, and Vail, extravagant meals, and a luxury vehicle. PILDES did so despite claiming that he did not receive any compensation from SantaCon or PSI. As one example, in a March 2023 email to a representative of a potential Venue, PILDES explained that aside from fees for "ticket processing and production," "all the [ticket proceeds] collected go[] to [PSI], our not-for-profit partner that distributes to the charities we have listed on our charities page. No producer receives income from this event, this is a charity event."

4

9.     Annual SantaCon events from 2019 to 2024 organized by PSI raised approximately $2,054,000 in ticket sales from Attendees and approximately $675,000 in "charitable commissions" from Venues. STEFAN PILDES, the defendant, however, used his control of PSI's ticketing account with Platform-1 to deposit the vast majority of Attendee ticket proceeds directly into a COG bank account that PILDES controlled (the "COG Account"). During this period, PSI received approximately $567,000 in ticket sales, while COG received almost triple that amount— over $1.4 million.

10.     From there, STEFAN PILDES, the defendant, used SantaCon proceeds he had diverted to the COG Account, as well as other SantaCon proceeds in a PSI bank account that PILDES controlled, to pay for numerous personal expenses, including, among other things, (i) over $365,000 to renovate a lakefront property in New Jersey; (ii) approximately $124,000 toward the lease of a luxury Manhattan apartment; (iii) a $100,000 investment in a boutique resort in Costa Rica founded by a personal friend; and (iv) a nearly $3,000 birthday dinner at a Michelin-starred restaurant in Manhattan.

## COUNT ONE
### (Wire Fraud)

11.     The allegations contained in paragraphs 1 through 10 of this Indictment are repeated and realleged as if fully set forth herein.

12.     From at least in or about November 2019, up through and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, STEFAN PILDES, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds,

for the purpose of executing such scheme and artifice, to wit, PILDES engaged in a scheme to defraud Attendees and Venues by making false and misleading statements about the use of SantaCon proceeds in order to promote the event, raise such proceeds, and fraudulently convert them to his own personal use, and in furtherance of that scheme used interstate wires, some of which transited to, from, or through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

13.    As a result of committing the offense alleged in Count One of this Indictment, STEFAN PILDES, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense and the following specific property:

a.    The real property located at 681 Lakeshore Drive, Hewitt, New Jersey 07421; New Jersey Tax Map Reference: Township of West Milford, Block No 1816, Lot No. 11;

b.    Any and all funds on deposit in the J.P. Morgan Chase Bank, N.A. business checking account held in the name of Creative Opportunities Group, Inc. with account number 252835985;

c.    Any and all funds on deposit in the J.P. Morgan Chase Bank, N.A. business savings account held in the name of Creative Opportunities Group, Inc. with account number 3801078206; and

d.    Any and all funds on deposit in the three J.P. Morgan Securities LLC accounts held in the name of Creative Opportunities Group, Inc. with account numbers 76739161,

6

76739162, and 76739163.

## Substitute Assets Provision

14.     If any of the above-described forfeitable property, as a result of any act or omission

of STEFAN PILDES, the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third person;

      c.     has been placed beyond the jurisdiction of the Court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be subdivided

         without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

JAY CLAYTON
United States Attorney

7